UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
ALEAH HOLLAND

                                      Plaintiff,                      FIRST AMENDED
                                                                      COMPLAINT AND
                -against-                                                JURY DEMAND

THE CITY OF NEW YORK; OFFICER CHRISTOPHER       Docket#: 12CV1758(NG)(VVP)
CARITA SHIELD# 6863; SERGEANT SCOTT KIENLE
SHIELD# 1451; DETECTIVE MARK BEELITZ                  ECF CASE
SHIELD# 1176; SERGEANT JEROME BACCHI.

                                        Defendants,
------------------------------------------------------------------------ x

Plaintiff ALEAH HOLLAND, by her attorneys, Stoll, Glickman & Bellina, LLP, for her complaint alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of her Fourth and Fourteenth Amendment rights.

2.    The claim arises from an April 14, 2009 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, false arrest, false imprisonment and malicious prosecution.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of

New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Police Officer Christopher Carita, Shield #6863 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Carita was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow

officers when he observed them violating plaintiff's Fourth and Fourteenth Amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Carita was under the command of the 67th precinct and is sued in his individual capacity.

11. Police Sergeant Kienle, Shield #1451, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Kienle was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Kienle was under the command of the 67th precinct and is sued in his individual capacity.

12. Police Detective Mark Beelitz, Shield #1176 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Beelitz was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's Fourth and Fourteenth Amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Beelitz was under the command of the 67th precinct and is sued in his individual capacity.

13. Police Sergeant Jerone Bacchi was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Bacchi was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's Fourth and Fourteenth Amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Bacchi

was under the command of the 67th precinct and is sued in his individual capacity

14. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

15. On April 14, 2009 at approximately 11:30 PM plaintiff was in the vicinity of 215 E 91st Street in Brooklyn NY.

16. Plaintiff and her daughter were exiting the home of a friend. The two were waiting for plaintiff's son to emerge from the friend's apartment.

17. Plaintiff observed defendants stopping, questioning, and searching two young males.

18. After watching the questioning for several minutes plaintiff recognized the two young males as students who were participants in an after school program which plaintiff runs.

19. Defendants were not allowing the two young men to leave the area even though they had committed no criminal act. It was raining that night and the two were getting wet as they were detained for several minutes.

20. Plaintiff grew concerned for the students. From across the street she told the defendants that she knew the young men, and asked defendants whether it was necessary to keep them there in the rain.

21. Defendants responded to plaintiff's questioning by telling her to mind her own business and leave them alone.

22. Plaintiff then used her cell phone to call 911 and report the defendants harassing the young men.

23. While still on the phone she asked defendants for their names so she could report their

conduct to internal affairs.

24. Defendant Kienle gave plaintiff his name and plaintiff provided it to the 911 responder.

25. When plaintiff hung up her phone call to 911, defendants began insulting and demeaning her.

26. Plaintiff's son emerged from the home to see the officers insulting his mother and detaining the two students.

27. Plaintiff's son then got into their family car which was parked on the block nearby with the intent of driving his mother and sister home.

28. As plaintiff's son entered the car defendants ordered him to produce his license and registration and allow them to search the car. Plaintiff's son complied with their instructions.

29. Defendants then searched plaintiff's vehicle without consent. This was done without reasonable suspicion or probable cause to believe any crime had been committed.

30. Defendants then threatened plaintiff with a parking ticket and demanded to see her license, which she produced.

31. Defendants ran a check on plaintiff's driver's license and found that it was suspended.

32. Plaintiff's driver's license had in fact been suspended prior to this incident; however she was not driving her vehicle at any time that night. Her son who possessed a valid driver's license drove the vehicle to its parking spot and would have driven it home that night.

33. Even though plaintiff was not driving a vehicle, defendants arrested plaintiff and charged her with aggravated unlicensed operation of a motor vehicle.

34. Plaintiff was held in police custody for approximately 26 hours before being released on her own recognizance.

35. Plaintiff was forced to make eleven court appearances to defend against these false

charges.

36. All charges against plaintiff were dismissed on April 5, 2010.

37. As a result of the charges filed against her, plaintiff was fired from her job, was unable to obtain a job for the duration of the prosecution, and was evicted from her home.

38. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

## DAMAGES

39. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of her rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of her person;

   b. Violation of her rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

   c. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   d. Loss of liberty.

   e. Economic loss.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

40. The above paragraphs are here incorporated by reference.

41. Defendants have deprived plaintiff of her civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 USC § 1983.

42. Defendants' conduct deprived plaintiff of her right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

43. Defendants falsely arrested and maliciously prosecuted plaintiff and failed to intervene in each other's obviously illegal actions.

44. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

45. The above paragraphs are here incorporated by reference.

46. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

47. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review

Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

48. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

49. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

50. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

51. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

52. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

53. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its

police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 28, 2012
      Brooklyn, New York

Respectfully yours,

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com

TO:    New York City
Corporation Counsel of the City of New York
Attention: ACC Caroline Chen
100 Church Street, 4th floor
New York, NY 10007

Officer Christopher Carita Shield #6863
C/o Corporation Counsel of the City of New York
Attention: ACC Caroline Chen
100 Church Street, 4th floor
New York, NY 10007

Sergeant Kienle, shield #1451
NYPD – 67th Precinct
2820 Snyder Avenue
Brooklyn, NY, 11226

Detective Mark Beelitz, Shield #1176
NYPD – Crime Scene Unit
150-14 Jamaica Avenue
Jamaica NY 11432

Sergeant Jermone Bacchi
NYPD – Crime Scene Unit
150-14 Jamaica Avenue
Jamaica NY 11432